Vigilant Ins. Co. v MF Global Fin. USA Inc. (2023 NY Slip Op 02088)

Vigilant Ins. Co. v MF Global Fin. USA Inc.

2023 NY Slip Op 02088

Decided on April 25, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 25, 2023

Before: Renwick, A.P.J., Moulton, Shulman, Rodriguez, Pitt-Burke, JJ. 

Index No. 601621/09 Appeal No. 37-38 Case No. 2022-03714, 2022-03737 

[*1]Vigilant Insurance Company, et al., Plaintiffs, Axis Reinsurance Company, et al., Plaintiffs-Respondents-Appellants,
v
MF Global Finance USA Inc., Defendant-Appellant-Respondent. 

Mintz, Levin, Cohn, Ferris Glovsky and Popeo, P.C., New York (Therese M. Doherty of counsel), for appellant-respondent.
Clyde & Co US LLP, New York (Nicholas L. Magali and Gabriela Richeimer of the bar of the District of Columbia, admitted pro hac vice, of counsel), for AXIS Reinsurance Company, respondent-appellant.
Kaufman Dolowich & Voluck, LLP, New York (Kevin M. Mattessich of counsel), for Liberty Mutual Insurance Co., respondent-appellant.
Selendy Gay Elsberg PLLC, New York (Caitlin J. Halligan of counsel), for New Hampshire Insurance Company, respondent-appellant.

Judgment, Supreme Court, New York County (Melissa A. Crane, J.), entered August 16, 2022, in favor of defendant MF Global Finance USA Inc. and against plaintiffs New Hampshire Insurance Company, Axis Reinsurance Company, and Liberty Mutual Insurance Co. (collectively, the excess insurers) in the amounts of $5,517,649.33 against New Hampshire, $2,520,840.01 against Axis, and $3,781,260.00 against Liberty, and bringing up for review an order, same court and Justice, entered on or about July 12, 2022, which, to the extent appealed from as limited by the briefs, allowed the excess insurers to reduce their excess insurance liability based on above-limit settlement payments made by other insurers; calculated prejudgment interest owing from Liberty and Axis as running from March 17, 2022, the date this Court issued its decision holding the underlying insurers liable; and, with respect to MF Global's recovery for its counterclaim, assessed prejudgment interest during the period of the bankruptcy stay, unanimously affirmed, without costs. Appeal from aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
This action arises out of financial losses of approximately $141 million that MF Global incurred as a result of fraudulent commodity futures trading activity by Evan Dooley, then a trader associated with MF Global, on or about February 26 and 27, 2008. In accordance with its obligations as a clearing member of the Chicago Mercantile Exchange, MF Global immediately paid the loss and sought coverage under a primary insurance bond issued by New Hampshire, as well as under excess insurance bonds issued by the excess insurers. There were four layers of excess bonds; three of the excess bonds were issued by the plaintiffs that are nonparties to this appeal, all of which have previously settled with MF Global (the settling plaintiffs).
Supreme Court properly decreased the loss attributable to the excess plaintiffs by the full amount of the $117,020,287 that MF Global had received from the settling plaintiffs from the loss attributable to the excess plaintiffs. The valuation provision in § 6.7 of the primary bond and incorporated into each of the excess bonds mandated deduction of the settlements, including the above-limits settlement payments, from MF Global's recovery. The valuation provision in the bond provided, "[i]n determining the amount collectable under this bond for any loss, deductions shall be made in respect of any property (including money and securities) received from any source whatsoever, including payments and receipt of principal, interest, dividends, commissions and the like, whenever received, in connection with any matter from which an indemnifiable loss has arisen." This valuation provision unambiguously includes the amounts the settling plaintiffs paid in settlement, and the plain text of the settlement agreements leaves no doubt that the settlement payments, including above-limits payments, were [*2]made in connection with the loss.
We reject MF Global's strained assertion that the above-limits payments from settling plaintiffs were not made "in connection with" Dooley's trades because they resulted independently from the settling plaintiffs' supervening breach of the insurance bond and years of litigation on MF Global's counterclaim, as opposed to from the "loss" itself. New York courts read the phrases "in connection with" and "arising out of" expansively, requiring that there only be some form of causal relationship (see e.g. Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d 34, 38 [2010]). Even giving full weight to MF Global's contention that the above-limits payments were solely for the payment of interest and attorneys' fees, those payments would still fall within the broad language of § 6.7, which expressly mandates deduction for "any property" including "money" and "interest."
Applying the unambiguous language of the excess bond provided by Liberty, Supreme Court properly held that that bond was not exhausted until March 17, 2022, when this Court determined coverage and found that New Hampshire was liable to pay the primary bond (New Hampshire Ins. Co. v MF Global Fin. USA Inc., 204 AD3d 141, 157 [1st Dept 2022]). Liberty's excess bond, which applied to both Axis and Liberty, contained an exhaustion provision stating that it would provide coverage only when the underlying limit of liability was exhausted by reason of the insurers of those underlying policies "paying or being held liable to pay" the full amount of the underlying limits. The plain language of this provision was unambiguous: no payment was due under the Liberty excess bond until the day that the underlying insurers paid the full amount of their limits, or a court made a legal determination holding that the underlying insurers were liable to pay their limits. Thus, Liberty and Axis's performance was not required, and prejudgment interest did not begin to accrue, until March 17, 2022 (see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 203 AD3d 541 [1st Dept 2022]).
Finally, Supreme Court correctly found that there was no basis under New York law to toll the imposition of mandatory prejudgment interest under CPLR 5001(a) because of defendant's bankruptcy stay (see Friedman v Eisenstein, 263 AD2d 367 [1st Dept 1999]). CPLR 5001 provides that interest "shall" be recovered and "shall be computed from the earliest ascertainable date the cause of action existed" (CPLR 5001[a], [b]). Courts have declined to award prejudgment interest only in a narrow set of cases where the parties either contracted around the statute, punitive damages had been awarded or where interest would amount to a windfall to the non-breaching party (see J. D'Addario & Co., Inc. v Embassy Indus., Inc., 20 NY3d 113, 118-119 [2012]; see also GE Funding Capital Mkt. Servs., Inc. v Nebraska Inv. Fin. Auth., 767 Fed Appx 110, 115 [2d Cir 2019]; Jamieson v Securities Am., Inc., 2022 WL [*3]1307875, *2, 2022 US Dist LEXIS 80179, *7 [SD NY, Mar. 17, 2022, No. 19 Civ. 1817 (VB)(JMC)], report & recommendation adopted, 2022 WL 1304590, 2022 US Dist LEXIS 79489 [SD NY 2022]). None of these circumstances are present here.
We have considered the parties' remaining contentions for affirmative relief, and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 25, 2023